Curia, per
Johnson, J.
This court concur with the very learned chancellor, who tried this cause, in alibis conclusions on the questions growing out of this case, except that which allows to the defendants a credit of §500 in their accounts with the estate of their intestate for so much paid by them to Mrs. Smith, the widow, on account of hex dower in the Green Savanna plantation. As explained in the argument, it appears that Mrs. Smith had instituted proceedings to obtain her dower in the lands, and the commissioners finding it impracticable to lay off the dower in the land itself, without doing injustice to the parties, assessed the sum mentioned in lieu thereof, and the defendants paid her the amount out of the general funds of the estate, and the land still remains undisposed of. The objection now is that assessmenB ⅛ a charge upon the land itself, and not on the general funds of the estate, and that the payment was a devastavit, and ought not to have been allowed.
The right of dower consists of a property in the soil itself, and although the act of the legislature regulating the admeasurement has, under particular circumstances, authorized the substitution or assessment of a sum of money in lieu of it; yet the character of the right is *557 unchanged, and it operates as a charge upon the land itself, and not on the general funds of the estate. It is not perceived how this question can materially affect the rights of these parties, if the lands are worth the sum assessed; but cases might arise in which it would be important, and in settling principles we ought to look to all the consequences. Let us suppose, for instance, that a particular creditor has a specific lien on Green Savanna for the payment of his debt, and that there were other debts of superior degree sufficient to cover the whole residue of the estate real and personal. Now it is obvious in such a case the payment of the sum assessed, in lieu of dower, out of the general fund would in effect transfer so much from the creditors of the last description to the first, in direct violation of the act regulating the distribution of assets. Many other examples of the same sort might be put, and it is very clear that in point of principle this payment was improperly made. In this respect therefore the decree must be reformed, and this item expunged from the account.
There are two other points in the case, as to which the court deem it necessary to state, in a concise way, the reasons on which its concurrence with the chancellor is founded. The first of these relates to the bond purchased by Mr. Gailuchal, and by him transferred to Mr. Louden, who has exhibited it as a demand against the estate of the defendant’s intestate.
The case of Fleming v. if any doubt about it ever
Mulligan has established *the doctrine, existed before, that a note made for the purpose of being sent into the market and without any consideration is usurious and void even in the hands of an innocent holder, if discounted in the first instance at an usurious rate of interest; and the doctrine applies with all its force ta bonds similarly situated. But in that case the fact was clearly and distinctly proved ; and I apprehend that according to principle strict proof would be required in all cases operating as a forfeiture on innocent holders. Let us then examine the evidence adduced in this case, and inquire whether the facts be proved.
In the first place, the bond itself being a contract under seal presupposes a consideration; and in the next there is no direct evidence of a want of consideration. It is attempted to be inferred, however, from the evidence of the witness Mairs, who negociated the sale to Gailuchal, who supposed that is was made without consideration in the first instance, and intended to raise money; but he furnishes no fact from which this conclusion can be drawn, except that it was put into his hands to be sold. Now, although it is notorious that these means are often resorted to for the purpose of raising money, it is equally certain that individuals frequently find it to their interest to send notes, bonds, and other securities into market to be discounted, although they are founded on adequate considerations, and such paper is clearly the subject of legitimate traffic. The chances then are equal whether this bond was or was not founded on a consideration, and the presumption in its favor must prevail. Again, conclusive proof of the fact was in the power of the defendants, if in truth it existed. Thomas R. Smith, one of the parties, is under the act a competent witness ; he was within the process of the court, and might have been required to give evidence; and although the omission to do *558 so is not conclusive* against the defendants, it may be taken into the account in weighing the evidence.
The remaining question which the court deem it necessary to notice is that arising out of the claim made to charge the devastavit committed by the intestate B. B. Smith, executor of Mrs. Ann Downes Smith, as a bond debt against his estate. The act of 1789, directing the mode in which debts due by an estate shall be paid, provides first for the funeral and other expenses of the last sickness, and the expenses of administration; next debts due to the public; next judgments, mortgages, and executions, the oldest first; next rent; then bonds and other obligations; and last, of all, debts due on open accounts. The question then arises to which of these classes does this demand belong? Now I take it, that it is impossible by any subtility or refinement to transform it into judgment, mortgage, execution, bond or other obligations; and of necessity it must fall within the last, and be postponed until all the preceding are paid. The case of Gadsden’s Ex. v. Lord’s Ex. 1 Desaus. Rep. 208, has been relied on as conclusive of the rights of the parties to have this demand placed on the footing of a bond debt, and the analogy between them is certainly very striking. It will be difficult, however, to maintain that case on principle, and its authority as a precedent is shaken bjr the refusal of the court to adopt the principle in any subsequent case; for without laying the axe to the root, they have evidently been laboring to get rid of it by carving out exceptions after exception (vide 3 Desaus. Rep. 116); therefore without saying more of it, I will refer to the opinion of this court in the case of Rolain v. Darby, 1 M’Cord’s Cha. Rep. 472, as overruling its authority.
Neither the wisdom nor the policy of the discrimination made in ^le Payment of debts of different grades *out of an insolvent estate is readily perceived when applied to the state of things in this country, and I were now permitted to make a law on the subject it might be otherwise, but to us belongs the exposition of the law only, and on this subject we find the rule prescribed in terms that are not to be misconceived, and so strong that we are unable to bend it to subserve even the cause of the orphan.

Decree affirmed.